We will hear argument next in Case No. 24-1315, MemoryWeb v. Samsung Electronics. Good morning, Your Honors. May it please the Court, Jennifer Hayes for Appellant MemoryWeb. I plan to focus on three issues that demonstrate errors committed by the Board in the 228 and 658 IPRs. Unless Your Honors would like to direct me to another issue. But can I just ask, if in the case we just heard, we affirm with respect to all the cross-appeal, then there's nothing left to decide in this matter, is that right? I would agree with that. If you affirm the 228 and 658 Apple decisions, then these appeals would become moot and we would request that the Federal Circuit remand the decisions back to the Board to dismiss them so that there is no collateral estoppel effect from any of the findings that the Board made in those decisions. Okay. Would that actually be necessary? You can't give collateral estoppel effect to a decision that can't be appealed, including for mootness. I would agree with that. All right, that's the tertiary principle. In several of the cases that we cited in our briefs, the U.S. v. Munningswear case, I believe. In that case, they explain that principle, but they also explain that the underlying decision can be remanded back to the lower court so that there's no collateral estoppel effect of the decision. And here, with respect to the memory web patents, as you are aware, there are multiple other patents. And so what we do not want to happen is for any of the factual findings in the Samsung appeals to impact any of the related memory web patents. There are patents that the Board has not analyzed in any of the proceedings. They have issued from the Patent Office. They have not been asserted against any third parties. And so we wouldn't want the Board's findings on the disclosures of Okamura or whether Okamura, in view of beliefs, renders certain claim limitations obvious to have an impact on pending claims that the Board hasn't analyzed as a result of collateral estoppel. And so for those reasons, we submit that the appropriate action is to remand back to the Board to dismiss the IPRs. And at least because there's different prior art here than there was in the Apple case, there are different findings in the two proceedings.  Okay, thank you. With respect to the proceedings in the Samsung appeals, the Board's decisions are inconsistent. In the 228 IPR, they found that certain claims were invalid over – that Samsung did not meet its burden to show that Okamura, in view of beliefs, invalidates the claims. But then in the 698 decision, they reached the opposite conclusion. And the Board doesn't explain the rationale for their inconsistency. And for that reason, at a minimum, the Court may remand that decision back to the Board to explain the inconsistency. But we respectfully submit that you don't even need to do that, that you can reverse the Board's decision because the 228 decision is final. Samsung didn't appeal the decision with respect to claims 18 through 19. And so the Board's factual findings are final. Collateral estoppel applies to those findings for claims 18 through 19. Claim 7 includes similar limitations to those claims. Can I double-check something? So if Samsung had, in the 228, appealed the adverse ruling on claims 18 and 19, and then pretty soon thereafter it became clear that that dispute in that appeal, the 228 appeal, would be moot because of the other proceeding, at that point you would not have a collateral estoppel argument, right? That would be, I'm just going to call it the kersher principle that we were just talking about, because there would have been no appealability because of mootness. Do I understand that right? I think that it's correct. If Samsung had appealed the 228 decision, we would be in a different situation. And I believe you would be correct about the application of the law, but that's not what Samsung did, and they're bound by their decision of not appealing. They waived their appeal rights for those claims. With respect to, I think it's the 228, doesn't the Board say the petition is deficient, as opposed to make a factual finding about what Okamura and Belitz disclose? That's correct. So how could that lead to an estoppel determination? Isn't it really more akin to a pleading defect as opposed to a finding of fact? It's a pleading defect, but the petition is the same in the 658 and the 228 with respect to the evidence that they submit. I can see, and I think you do also make this argument, but tell me if I'm wrong. I can see how that might mean you have an arbitrary and capricious situation if the Board looked at the very same thing and comes to completely different conclusions. I can sort of see that argument, but is that really also an estoppel problem, or is it not? I understand the point that you're making. I think, though, that you have to look at it in the context of what the Board does in their review. They provided a petition that sets forth all of the evidence and the facts, and it's the petition itself that sets the boundaries of the IPR, so to speak. If the petition is deficient in one instance, it is, in effect, a factual finding that they didn't meet their burden. Let me just make sure I'm at the right page. It's Appendix 94 where the Board says the petition does not adequately explain how the combined teachings of the two references render Claim 18 obvious. You understood that was the claim and the discussion I was referring to?  So just for the sake of argument, if there were no 658 and a contrary view, could we say that there's some sort of factual finding that would give rise to estoppel just based on a failure to adequately explain? That seems akin to not saying what Okamura and Belitz actually disclose, but just saying, hey, Samsung, you failed to tell us in a way we can understand what those two references disclose. I think, at a minimum, the Board's fact-finding where they agreed that Figure 24 is displayed in response to a mouse hover over Figure 23 and not Figure 21 is a finding to which collateral estoppel would apply. Can I just ask this? I have no idea what the answer to this is. Can collateral estoppel or issue preclusion apply to the issue of whether a pleading is sufficient? And if... I will concede that I have not researched the law in the entire universe of that. I read the cases that relate to when collateral estoppel applies in relation to PTAB proceedings and that are cited in our briefs, and so I can't speak to the broad general proposition. But I submit that the cases that we do cite support that, at a minimum, that the Board's finding in relation to how Okamura works is issue preclusive and is determinative of the correct outcome of the 658 decision with respect to Claims 7 through 12. And with respect to Claims 7 through 12, Samsung made the same argument that you go from Figure 21 straight to Figure 24 and didn't actually address Figure 23 or the mouse hover in the petition. And the Board said that was deficient. That same fact-finding is relevant to whether the display of the person view is responsive to the input in the people view that gets you to the person view, which relates directly to the responsive to claim construction, which was the next issue. So I actually want to bring you back to Munsingware for a minute. So if we were to Munsingware the two final written decisions, would we do so even for the portions of the ruling that were not appealed? I'm not aware of, I mean, that sounds like half of Munsingware. I don't think Munsingware directly addressed that issue. There was another case that we cited in our briefs. I'm not aware of. I think the cases that most closely align with the facts in this case are the Ohio Willow Wood case, which found that collateral estoppel applies when the substantive issues are the same. I'm sorry. I'm actually just thinking about a different point. So we began the discussion this morning with you about take as an assumption that we would affirm with respect to the cross-appeal in the Apple cases that we just heard. And you agreed there's nothing more to decide here. And you said, but please vacate the board's decisions. At the time of that exchange, I was thinking this is a binary thing. You either vacate the decision or you don't vacate the decision. And now I'm focusing on the possibility, which I've never thought of before, of vacating the decision with respect to those rulings that were live on appeal as opposed to those rulings that were final because they haven't been appealed, like 228.18.19. I think that would be a correct application of the law on that issue. Can I just ask you, the simultaneity issue that goes to the construction of people view, is that right? That's correct. The red brief at 23 has this example of an embodiment in which the names are displayed by fading in one at a time, and they say there's nothing in the record to indicate that that would not be within the scope of a properly construed sense of this term. What's your response to that? We disagree, so our view is that the claims set forth a particular navigation or flow through different views, and the claims set forth all of the contents that need to be within those views. The claims also recite that the view needs to be displayed responsive to a particular input. And when you look at the claims and the context of the description, which explains that the purpose of the invention is to help users navigate through all of their photos in an efficient manner and get all of the information that they want to get out of them, that it requires that all of the features of the claims be viewable to the user in response to that particular input. So it's a combination of the claims themselves, setting out all of the components, the intrinsic record, which explains what the purpose of the invention is, all of the examples of how the people view works in the invention, and this is something that the board found. Do you also need us, because you've said responsive to a couple times in your answer, do you need us to also agree with you on the proper construction of responsive to, or is that a fully independent issue than the people view construction? We don't think it's necessary to decide responsive to to reach the correct result of simultaneity with respect to the people view, but we do think it aids in understanding the full scope of the claims, that when you look at all of the words in context and give all of them meaning, that it requires the result of simultaneity in the display of each of the components in the people view. You have run out of time. I will restore your rebuttal time, and let's hear from the other side. Thank you. Please. May it please the court. Christopher Dreyer on behalf of Samsung Electronics. I'm going to start with the issue of the relationship to the 228 decision on claims 18 and 19. That's sort of the focus of my colleague's argument, and then I'll turn to the two interrelated claim construction issues. First of all, the answer to your question, Judge Ferrante, was can there be preclusion where the board itself distinguished? I think between what Judge Stark kind of characterizes as a pleading defect and an ultimate determination on the merits is no. I think the Jones case is really on point here, where it says that when a tribunal itself says it's not deciding an issue, that issue can't give rise to preclusion. And I think that's a bright line rule. MemoryWeb hasn't cited anything that creates an exception to it, and I think it has to be a bright line rule because the whole purpose of these preclusion doctrines is to kind of establish certainty and finality, which would be disturbed if everything that a tribunal says about what it decided and didn't decide has to be second-guessed in a later proceeding. With respect to the question of whether there really is a distinction between deciding this pleading defect and deciding the merits of patentability, I think there absolutely is a distinction, and I don't think... I guess what at least I was musing about was something that starts with the premise that there is such a distinction, but then the next question is why shouldn't issue preclusion be applicable to a determination that there is a pleading defect? And if there's absolutely no material difference between the pleading in Case 1 and the pleading in Case 2, then there's got to be the same pleading defect in Case 2. That's what at least I was focusing on. I think on a record where that issue was squarely presented, that might be correct, that a pleading defect in a prior decision would be determinative of an identical pleading in a later or simultaneous decision. That's not really what we have here because the reason I think that the Board ultimately reached these allegedly inconsistent results is because MemoryWeb itself framed its arguments differently. So the Board was responding to a different record in making its determination on Claims 18 and 19 than it was when it was making its determination on Claims 7 as well. I guess I'm a little confused about why you're focusing on what MemoryWeb did. So I took it that the Board said in the 228 proceeding with respect to 18 and 19, your petition was defective, to use that term, insufficient. Well, your petition on the 658 on these other claims, 8 through 12, I guess, is not materially different. QED, that must be deficient too. Yes, that must be deficient too, without even looking at it again. So I think the reason is that the whole issue of there being a defect in the petition was raised by MemoryWeb in the 228 patent proceeding, but was not raised by MemoryWeb in the 658 patent proceeding. In the 658 patent proceeding, at Appendix 416 to 422, where they're addressing this limitation, it's all claim construction. There's no allegation of a pleading defect or deficiency in the petition. Every argument they make is contingent on the Board accepting their construction of responsive to. In contrast, in the 228 patent case, MemoryWeb specifically claimed there was a deficiency in the petition at Appendix 9732. And so the Board was presented with a new argument that it wasn't presented with in the 658 patent case, and it adopted that new argument. And I think the Board can't really be faulted for not having, in the earlier decision, remember, the 658 patent decision was issued actually months before the 228 patent decision. So the Board can't be faulted for, in the earlier decision, having not foreseen this alleged pleading defect argument. Well, just, I mean, since we're talking here about issue preclusion, collateral and stocking, same thing, right? Why does it matter? Why are we talking about what the Board can be faulted for having done? We're talking about whether we, as a court, are required to give issue preclusive effective to a final judgment under the Supreme Court, B&B hardware, treating it more or less just as if it were a case number one court decision. We're the ones who would be giving issue preclusive effect, not the Board. I think that's right, Your Honor. And really the timing goes more to their alternative argument that the Board needed to provide some more explanation. With respect to preclusion specifically, I think really the two principles that establish why preclusion is inapplicable here is that the Board itself said it wasn't deciding patentability. That's the Jones case. And that even if somehow you could revisit that and question it and say that the pleading issue kind of bleeds over, the well-established doctrine that preclusion doesn't attach or already has little incentive to appeal the earlier decision is really squarely on point here. And we say to the power integrations case, there they've been found not to infringe. But you didn't lack for incentive until 18 and 19 were definitively dead because of Memory Webb's decision not to appeal. Well, the doctrine is not limited to a situation where literally there is no risk left. It's a situation where there is diminished, substantially diminished risk. And certainly at the time that we would have been bringing a hypothetical cross-appeal, we had the Apple decision in hand. We knew that the Board had found those claims unpatentable. We could read the decision and see that it was unlikely to be appealed and unlikely to be reversed on appeal even if it had been. And that is really closely analogous, I think, to the power integrations case where the party had been found not to infringe. The difference is here, the claims have independently been found unpatentable. So I think those two doctrines really provide the clearest reason why collateral estoppel can't attach here. In response to Judge Gerardo's questions, you went to differences in Memory Webb's responses to your two petitions. Should I understand you do not dispute that the two petitions were substantively, materially, in all respects, identical? I think with respect to what the petition said about why these particular limitations were satisfied, I would have to concede that. Would you like to or can you please talk about the simultaneity issue? Yes, I would love to turn to that. I think where I'd like to start with the simultaneity issue is to really frame how narrow the dispute here is. And the best place to do that is at Appendix 6948-49, which is from the oral hearing. This is Memory Webb's counsel's explanation of what its claims do cover. Memory Webb says that what is contemplated by the claims includes a situation where not all of the elements of a view. I'm sorry, where exactly am I? So if we're on 6948, line really 3 to 14. Okay, thank you. And what Memory Webb's counsel said is what's contemplated by the claims is the view refers to what is delivered by the application to the user interface device. So there will possibly be situations where there are more photos that can be played on the actual screen. So scrolling down, that's permitted under their reading of the claims. That's exactly the same as the prior art, where all that is alleged, even by Memory Webb, to be needed is scrolling over the thumbnail and then the name is displayed. So I think I understood how important this focus is on scrolling, which can mean maybe a couple of different things, I'm not sure. And I kept wanting to hear more about the innards, the mechanics of sending something to the screen, scrolling as though you've got some giant photo in front of you. But of course your field of vision is this, so you have to look around, is that different from an action that sends this and another action that sends this other piece? And I didn't see what I was looking for, to get an explanation of how what intuitively, as a regular computer user, seemed like different things. So can you help me out there? The board's position, did the board say a sequence of separate clicks for item number one and item number two and item number three and item number four? They're really two pairs, isn't it, right? And they can be nowhere in the user's computer, all at the same time, in whatever part, like the cache for the screen. Help me out. I don't think the board reached that level of granularity. And I think what's – and I don't – honestly, I don't think that was really briefed or argued by the partners or developers, probably why you were looking for it and not finding it. And I think there's a very good reason why that's nowhere in the record, because it's also nowhere in the memory web patterns. What happens technically, if you know, when the mouse scrolls over a particular spot on the screen in the accused software? So in the prior art, the example is the mouse scrolls over the thumbnail, right? And then that causes the associated information, which can be a name, to be displayed. And what's technically happening under the hood, I think, probably could be implemented in a variety of different ways. But one straightforward implementation would be that all of the information is sent to the device. And the device contains software instructions, which tell you which pieces of the information are being displayed when. And so when you scroll over the face, it shows the name that is associated with the face. And when you scroll over to another face, that name disappears and a different name appears. Could it be implemented a different way under the hood? I think it probably could be. Neither the patents nor the prior art get into those implementation details, which I think really goes to the fact that those implementation details can't be what the claims turn on. And this is really a claim construction point, is that right? I think it is a claim construction point. And was there testimony from, or I don't mean live witnesses, but testimony either written or oral by people talking about what a skilled artist would understand about being on the screen and how scrolling down to the bottom, up and down, is a quite different thing from rolling the mouse over a spot. I don't think there is testimony distinguishing those two things. I think there was certainly expert testimony on both sides agreeing that the scrolling down would be covered. But there was no expert testimony really explaining how scrolling over a thumbnail somehow is different in a way that matters to the claim language. But there is intrinsic evidence on this claim construction dispute, and it seems to cut against you. The claim uses and as a connection between the four items. I think all the disclosed embodiments in the patents that are being challenged show all four things at the same time. Isn't that pretty powerful intrinsic evidence against you? I don't think so. I mean, first of all, of course, Your Honor knows that we don't limit patents to the disclosed embodiments. We apply them plainly. We don't ignore it either. But I think the more important thing is that the patent also says that all of the photos are part of the view. But it also teaches that you might have to select between 20 or 50 or 100 of them to be displayed at once. So all of them are part of the view, just like those four things. And yet the patent explicitly contemplates that you might have to click through multiple pages to see all of them. So that's really a powerful piece of intrinsic evidence, we think, that shows why additional user interaction can't be precluded. Because you'd be weeding out all of the embodiments where you have more photos than are being showed per page. Can I just ask you, what's your take on, I hope you understand this shorthand, partial Munsingware? I think partial Munsingware, in theory, is permissible. I don't think it's really appropriate in this case where the request was made for the first time in oral argument. And I think it implicates some really complicated issues about what effect that would have on patent office regulations about adverse judgment and sort of distinct from normal collateral estoppel effects. I think if the court was going to decide that issue, it should do it in a case where it was really brief from the outset and not raised for the first time in argument. Does that answer go to everything about what the proper disposition would be here in a world with, by assumption, if we did, in the first case, affirm on the cross appeal? That is, do you oppose a vacate and remand with directions to dismiss? I think we do oppose it on the ground of forfeiture. That said, of course, the court has discretion to excuse it and to nevertheless entertain the request. I do think, as the claims that were not even appealed in the Apple IPR, I don't think it would be appropriate there because, of course, Munsingware is only available in happenstance situations. And as for those other claims, it was really MemoryWeb's conscious choice not to appeal them, which resulted in the mootness. I think that puts it more in the U.S. Bancorp case than in the Munsingware situation. Thank you. There are two key issues that I'd like to respond to in relation to counsel's arguments. They directed you to the Appendix 416 through 417 to argue that MemoryWeb's arguments with respect to Claims 7 through 12 were different in the 658 IPR than the 228 IPR. The APPX 416 through 417 is the board's rehearing decision, and it addressed a very limited issue that was raised in our rehearing briefs. Those are not part of the record, but it's clear, if you read the rehearing decision, that the only issue we raised in the rehearing briefs was that the board's decision was incorrect because it overlooked the responsive to issue. The patent owner responses were very similar for Claims 7 through 12 in the 658, and the board's response was very different. The patent owner response that addressed Claims 7 through 12 in the 658 proceeding are not part of the record, but I can represent to you that the arguments were the same. Relying on the rehearing decision at 416 through 417 doesn't accurately characterize the arguments that we made below. The other issue I wanted to address was your question about whether any expert testimony is in the record relating to the difference between a scroll and a mouse hover, and I respectfully submit that there was. MemoryWeb's expert, Dr. Reidman... Are you about to point us to a JA page or just in the record but not in the JA? It is in the record 5980 through 5981. I'm sorry, I gave you the wrong pages, but it's not too far from that. It is 5993 through 5994. And what do you want to tell us about that? So here, Dr. Reidman distinguished between a hover action. He explains that with the hover action, and this is in particular on 5994, page 90, starting at line 1. The hover action would be where it's bringing additional material that was not intended to be displayed. That user action is bringing in additional material, and he distinguishes that from a scroll. He does that also on 5994, page 90, starting at line 10, where he says, but something like a scroll, I believe, would be different in that the application view has all of the content displayed. And he explains that that's different than a hover or click where the user is actually requesting additional information to be loaded. He expands on that at page 90, lines 5 through 9, at APPX 5994. And so, I think your honor is getting to the precise issue, which is, what is the difference between a view and a screen, and are they the same? And our view is that they're different, that a view is not necessarily a screen. In some cases, it will be, but in other cases, it will be different. If you're looking at photos on a smartphone display, it's much smaller, and so you can't see all of the information without performing some user interaction. The information is already there. The user is just scrolling to see the information that is already in the view. I guess in the way I'm thinking about it, a lot is built into the meaning of the word there. And that's kind of what I want to know. Not necessarily here, but in a cache that's just moving things around, or outside the cache and has to be loaded into the cache from some other place. I'm not sure what the there is. I agree with you that the experts didn't go into that level of detail about the difference between a scroll and a hover. I would respectfully submit that it's at least implied in Dr. Reidman's testimony, where he is distinguishing between a hover and the scroll. At least what's implied, in my view, is that a hover, and even counsel conceded it, that there are at least some examples where a hover requires pulling information that is not there from an external source in order for it to be actually viewed in the view. Whereas with scrolling, it would already be there. Okay, I think we're all done. Thank you to all counsel. The case is submitted.